UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MELISSA KAY QUAILE,

    Plaintiff,

v.                                      Case No:   2:18-cv-38-FtM-DNF

NANCY A. BERRYHILL, ACTING
COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

**OPINION AND ORDER**

Plaintiff, Melissa Kay Quaile, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a joint memorandum setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **REVERSED AND REMANDED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

    **I.    Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

  **A.  Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve

months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

### B. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that she is not undertaking substantial gainful

employment. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. § 404.1520(a)(4)(i). If a claimant is engaging in any substantial gainful activity, she will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that she is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit her physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled. 20 C.F.R. § 1520(c).

At step three, the claimant must prove that her impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii). If she meets this burden, she will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that her impairment meets or equals one of the impairments listed in Appendix 1, she must prove that her impairment prevents her from performing her past relevant work. *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of her past relevant work. 20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f). If the claimant can still perform her past relevant work, then she will not be found disabled. *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, she will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair

record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert ("VE"). *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that she is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

### C. Procedural History

Plaintiff filed an application for a period of disability and DIB on August 1, 2011. (Tr. 194-197). She also filed an application for SSI on August 2, 2011. (Tr. 198-207). In both applications, Plaintiff alleged disability beginning February, 1, 2010. (Tr. 194, 198). Plaintiff later amended the date of alleged onset to November 17, 2011. (Tr. 317).

Plaintiff's claims were initially denied on November 13, 2014, and upon reconsideration on April 16, 2015. (Tr. 126-128, 133-135, 144-148, 150-154). Plaintiff subsequently requested a hearing, which was held on November 10, 2016, before Administrative Law Judge William G. Reamon ("the ALJ"). (Tr. 32, 155-156). At this hearing, testimony was heard from Plaintiff, and Nicholas Fidanza, a vocational expert ("VE"). (Tr. 33). Following the hearing, the ALJ issued an unfavorable decision on March 3, 2017, finding that Plaintiff was not disabled. (Tr. 12-31). Ms. Quaile requested review of the ALJ's decision on March 27, 2017, which the Appeals Council denied on November 14, 2017. (Tr. 1-6, 191-193). Accordingly, the ALJ's decision became the Commissioner's final decision. Plaintiff initiated the instant action by Complaint (Doc. 1) on January 17, 2018.

**D. Summary of the ALJ's Decision**

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 17, 2011, the alleged onset date. (Tr. 17). At step two, the ALJ found that Plaintiff had the following severe impairments: chronic obstructive pulmonary disease, obesity, and lumbar spine arthralgias. (Tr. 17). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 19).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 404.15687(b) and 416.967(b) with these specific restrictions: she can climb stairs and ramps on a frequent basis; she can occasionally climb ladders, ropes, and scaffolds; she can frequently balance; she can occasionally stoop, kneel, crouch, and crawl; she must avoid concentrated exposure to extreme cold and vibration; she must avoid concentrated exposure to fumes, odors, dust, gasses, and poor ventilation; she must avoid concentrated exposure to dangerous moving machinery and unprotected heights.

(Tr. 20). At step four, the ALJ found that Plaintiff was unable to perform her past relevant work as a floor installer helper and shipping/receiving clerk. (Tr. 24.

At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 24). Relying on the testimony of the vocational expert, the ALJ found that Plaintiff could perform such jobs as electronics worker, small parts assembler, and ticket taker. (Tr. 25). The ALJ concluded that Plaintiff had not been under a disability since November 17, 2011, through the date of the decision, March 8, 2017. (Tr. 25-26).

## II. Analysis

Plaintiff raises a single issue on appeal: whether the ALJ erred by failing to properly consider Plaintiff's use of a nebulizer in assessing Plaintiff's RFC. Plaintiff contends that the vocational expert ("VE") testified that Plaintiff's use of nebulizer treatments would preclude her ability to perform the jobs identified by the VE. (Doc. 20 p. 14). Plaintiff argues that despite this testimony, the ALJ determined in conclusory fashion that Plaintiff's nebulizer use was not inconsistent with the RFC determined by the ALJ. (Doc. 20 p. 14). Plaintiff argues that it is clear from the VE's testimony that Plaintiff's nebulizer use, if accepted, would preclude all work and, thus, remand is necessary for the ALJ to make findings as to whether Plaintiff's use of the nebulizer is sufficiently supported by the evidence of record. (Doc. 20 p. 15).

In response, Defendant argues that the VE's testimony provides substantial evidence to support the ALJ's decision. (Doc. 20 p. 16). Defendant argues that if Plaintiff used her nebulizer during her work breaks, she would be off-task only ten minutes daily, well within acceptable limits. (Doc. 20 p. 17).

At the administrative hearing, Plaintiff testified that for the past two and a half years she has to use her nebulizer for breathing treatments every four hours, even in the middle of the night. (Tr. 45). Plaintiff testified that she cannot go anywhere without taking her nebulizer machine and medicine with her because she is afraid of how long she is going to be gone or if something happens and she ends up being stuck outsider her home. (Tr. 45). Plaintiff testified that between setup and administration of the medication, these treatments take approximately 15 to 20 minutes. (Tr. 45-46).

Later during the administrative hearing, the ALJ initially posed the following hypothetical to the VE:

> Okay. Well, let's assume from the claimant's testimony that she would be limited to work that would essentially be sedentary in nature. However, with the breathing episodes that she has, I think it's reasonable to assume that she's going to be off task dealing with not only the need for the duo neb types of treatments, but also, simply shortness of breath and, you know, coughing and such spells as that could take her off task certainly 15 to 20% of the work day. Likewise, she's probably not going to be fit for any work that involves exposures to fumes, odors, dusts, gases or poor ventilation and I think from a standpoint of doing that work that would involve temperature extremes, probably should not be exposed to, you know, temperatures at extremely hot end or at the cold end like, you know, one might be confronted with in, you know, commercial freezers and things like that. Would those types of limits rule out competitive work?

(Tr. 63-64). The VE responded that such limits would rule out competitive work because "once a person exceeds 10% of the day off time, for whatever reason, they're unable to sustain competitive employment. (Tr. 64). The ALJ then posed the following to the VE:

> The State Agency opines a light set of limitations, full range as the regulation would define light. However, they do recognize that ramp and stair climbing would be limited to frequent. Ladder, rope and scaffold climbing would be limited to occasional. Balancing would be frequent. Stooping and kneeling, crouching and crawling would be occasional. It's recommended that the individual avoid concentrated exposures to extreme cold, to vibration, to fumes, odors, dusts, gases, poor ventilation and also to hazards such as dangerous moving machinery and unprotected heights. Would that set of limits rule out past work?

(Tr. 64). The VE replied that past work would be excluded from the parameters of the hypothetical. (Tr. 64). However, the VE attested that the hypothetical claimant would be cable of performing the jobs of electronics worker, small product assembly, and ticket taker. (Tr. 64-65). The ALJ then asked whether competitive work would be precluded if the hypothetical claimant were absent from work 2 days a month or more on a continuing basis and the VE answered affirmatively that such a degree of absenteeism would preclude such a person from sustaining competitive employment. (Tr. 65).

Plaintiff's attorney then asked the VE how additional limitations would impact an individual described in the ALJ's second hypothetical. (Tr. 65-66). Specifically, Plaintiff's attorney asked if such an individual was "15% off task due to shortness of breath on exertion of doing items or using the treatments, would that preclude any of those jobs?" (Tr. 66). The VE reiterated that being off task in that manner would preclude those jobs. (Tr. 66).

In this case, the Court finds that remand is appropriate for the ALJ to develop the record as to Plaintiff's usage of a nebulizer. In his decision, the ALJ did not provide a detailed analysis of Plaintiff's nebulizer usage, but merely acknowledged Plaintiff's testimony and provided the conclusory statement that her usage of a nebulizer is not inconsistent with his RFC finding. (Tr. 23). Given Plaintiff's testimony that her nebulizer usage could take approximately forty minutes per workday to administer, it is not obvious to this Court how her nebulizer usage is not inconsistent with the RFC assessed by the ALJ.

The Court is unpersuaded by Defendant's explanation that Plaintiff could administer her nebulizer during her normal breaks and thus she would be off-task within acceptable limits. First, Defendant's argument is speculative, citing to no evidence demonstrating that the jobs identified by the VE would allow for Plaintiff to take breaks when necessary to administer her nebulizer treatments. Second, Defendant's argument constitutes a post hoc rationalization upon which the Court will not rely. *See, e.g., Dempsey v. Comm'r of Soc. Sec.*, 454 F. App'x 729, 733 (11th Cir. 2011) (finding that a court will not affirm based on a post hoc rationale that might have supported the ALJ's conclusion).

On remand, the ALJ shall conduct any proceedings as necessary to determine the frequency of Plaintiff's nebulizer usage, how it affects her ability to work, and how her usage affects available jobs.

## III. Conclusion

The decision of the Commissioner is **REVERSED AND REMANDED.** The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on February 22, 2019.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties